# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GOVERNMENT OF GUAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-2487 (KBJ) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

On September 30, 2018, this Court issued an Order denying a motion to dismiss

that the United States had filed in the instant matter, which is a case that involves cost-

recovery and contribution claims that the government of Guam has brought against the

United States. *See Gov't of Guam v. United States*, 341 F. Supp. 3d 74 (D.D.C. 2018).

(*See also* Order, ECF No. 37.)  Guam's complaint maintains that, "because the United

States substantially contributed to the environmental contamination at [Guam's] Ordot

Landfill, the United States should pay the full $160,000,000 cost of cleaning up the

dump under [the Comprehensive Environmental Response, Compensation, and Liability

Act's ('CERCLA's')] section 107(a)'s cost-recovery mechanism, or should at least pay

its fair share of the cleanup costs under CERCLA's section 113(f)(3)(B)'s contribution

mechanism[.]"  *Id.* at 76–77 (internal citations omitted).[1]  In its motion to dismiss, the

United States argued that (1) Guam cannot proceed on its section 107(a) cost-recovery

---

[1] In the context of CERCLA, courts commonly refer to the cost-recovery authority in section 9607(a) of Title 42 of the United States Code as a "section 107(a)" action, and they have dubbed the right to seek contribution under section 9613(f)(3)(B) of Title 42 a "section 113(f)(3)(B)" action.  This Memorandum Opinion generally employs that same nomenclature.

claim, because Guam "resolved its liability for th[e] cleanup" as part of a past settlement agreement with the United States and, as a result, a section 113(f)(3)(B) contribution claim is the exclusive CERCLA remedy available to Guam at present, *id*. at 80; and (2) Guam cannot proceed on any section 113(f)(3)(B) contribution claim against the United States because such a claim is now time-barred, *see id*. This Court disagreed with the proposition that Guam is precluded from bringing a section 107(a) cost-recovery claim, based on the plain language of the settlement agreement and the Court's interpretation of section 113(f)(B)(3), and thus, the Court denied the United States' Rule 12(b)(6) motion. *See id*. at 97 (concluding that "Guam's right to contribution under section 113(f)(3)(B) has not yet been triggered, which means that it is not precluded from proceeding via a cost-recovery action under section 107(a)").

Before this Court at present is another motion that the United States has presented for this Court's consideration: a motion to certify for interlocutory appeal this Court's Order denying the motion to dismiss, in accordance with section 1292(b) of Title 28 of the United States Code, and to stay all district court proceedings pending a decision by the D.C. Circuit on appeal. (*See* Mem. in Supp. of Def.'s Mot. to Certify Dismissal Orders for Interlocutory Appeal ("Def.'s Mem."), ECF No. 49-1, at 6.)[2] Because this Court finds that there is a substantial ground for difference of opinion regarding at least one controlling issue of law that the United States has identified, and that allowing the United States to appeal at this stage in the litigation could materially advance the litigation, *see* 28 U.S.C. § 1292(b), it concludes that the legal standard for

---

[2] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

certifying the prior Order for interlocutory appeal has been met.  The Court further

finds that a stay of the district court proceedings would benefit judicial economy and

would not subject the parties to hardship during the pendency of the requested appeal.

Therefore, the United States' motion for certification will be **GRANTED**, and all

district court proceedings will be **STAYED** pending the D.C. Circuit's resolution of the

United States' appeal.  A separate Order consistent with this Memorandum Opinion will

follow.

## I.

The facts and procedural history of this case are recited in full in the

Memorandum Opinion that this Court issued in conjunction with its Order denying the

United States' motion to dismiss.  *See Gov't of Guam*, 341 F. Supp. 3d at 78–81.  As

relevant to the instant motion, that Opinion notes that "Guam served as a central base of

operations for the United States Navy in the South Pacific" for the better part of 50

years, beginning in 1898, *id.* at 76 (citation omitted), and that during this period of use,

the Navy "established the Ordot Landfill to dispose of the waste being generated on the

island[,]" *id.* at 78 (citation omitted).  When the United States transferred ownership of

the landfill to the newly-formed civilian government of Guam in 1950, Guam

"continued to operate the Ordot Landfill as a dump until the facility was officially

closed in 2011." *Id.* (citation omitted).  Notably, even while it was in operation, the

Ordot Landfill had more than its share of maintenance issues; indeed, "[t]he

[Environmental Protection Agency ('EPA')] ha[d] been aware of . . . environmental

problems with the Ordot Landfill for many decades[,]" and the EPA "regularly ordered

Guam to devise a feasible plan for containing and disposing of the waste at the

landfill[.]" *Id.* at 78–79.

In 2002, "[t]he EPA finally filed a lawsuit against Guam"; the agency specifically claimed that "leachate was discharging from the Ordot Landfill into the Lonfit River and two of its tributaries in violation of the [Clean Water Act]." *Id.* at 79 (internal quotation marks and citation omitted). To resolve this legal action, in 2004, Guam and the EPA "entered into a consent decree" that "required Guam to pay a relatively modest civil penalty; mandated that Guam close the Ordot Landfill and cease the discharge of pollutants into the Lonfit River; and required Guam to construct a new municipal landfill to replace the Ordot Landfill." *Id.* (internal citations omitted). "[T]he Consent Decree [also] specifically provided that the agreement was based on the pleadings, before taking testimony or adjudicating any issue of fact or law, and without any finding or admission of liability against or by the Government of Guam." *Id.* (alteration, internal quotation marks, and citation omitted). Furthermore, the written agreement expressly stated that "nothing in this Consent Decree shall limit the ability of the United States to enforce any and all provisions of applicable federal laws and regulations for any violations unrelated to the claims in the [EPA's ] Complaint or for any future events that occur[.]" *Id.* (alteration and citation omitted).

Following entry of the 2004 Consent Decree, "remediation and closure work began[,]" at Guam's expense. *Id.* at 80 (alteration, internal quotation marks, and citation omitted). At present, "Guam expects costs of remediation to exceed approximately $160,000,000." *Id.* (internal quotation marks, ellipsis, and citation omitted). "Guam filed the instant CERCLA action against the United States [in 2017] to recoup its landfill-closure and remediation costs." *Id.* (*See also* Am. Compl., ECF

No. 7.)[3]

A.

The United States filed a motion to dismiss Guam's complaint under Federal Rule of Civil Procedure 12(b)(6) on November 27, 2017.  (*See* Def.'s Mot. to Dismiss, ECF No. 27.)  In that motion, the United States maintained that Guam cannot state a claim for either cost recovery or contribution under the CERCLA as a matter of law. (*See id.* at 2–3.)  The United States reasoned, first, that because "Guam resolved its liability for that cleanup in the 2004 Consent Decree," it "cannot recover its costs for remediating the Ordot Landfill under section 107(a)[.]"  *Gov't of Guam*, 341 F. Supp. 3d at 80 (citation omitted); *see also id.* (quoting the United States as arguing that "the exclusive CERCLA remedy for the costs a liable party is compelled to incur pursuant to a judicially-approved settlement with the United States" is a contribution claim under section 113(f)(3)(B)).  The United States then asserted that Guam cannot maintain a contribution claim under section 113(f)(3)(B) either, because the statute of limitations has long run on any such claim.  *See id.* (explaining the United States' view that "Guam [has] waited far too long after settling its liability in 2004 to bring its alternative claim

---

[3] The first count of Guam's three-count operative amended complaint, which was filed May 19, 2017, alleges that

> because the United States Navy contributed hazardous waste to the Ordot Landfill and managed that landfill for many decades, Guam is entitled to recover all of the 'removal and remediation costs' it incurred at or 'related to the Ordot Landfill, plus interest' from the United States pursuant to section 107(a) of the CERCLA.

*Gov't of Guam*, 341 F. Supp. 3d at 80 (internal citations omitted).  "The second count seeks 'a declaratory judgment of liability' to the effect that the United States will pay for Guam's future expenses relating to the remediation of the Ordot Landfill under CERCLA's section 113(g)(2)."  *Id.* (citation omitted).  In the alternative to the full cost-recovery counts, the complaint's third count seeks "contribution under section 113(f)(3)(B) of CERCLA[,]" on the grounds that, "even if it is not entitled to recover the full costs of remediation and closure of the Ordot Landfill, the United States must nevertheless pay 'for all such costs in excess of Plaintiff's fair and equitable share of costs.'"  *Id.* (alteration and citation omitted).

for contribution").

In response, Guam argued that it was legally entitled to maintain a full cost-recovery action under CERCLA section 107(a) because

> its right to maintain a contribution action under section 113(f)(3)(B) was never triggered [given that] Guam had not 'resolved its liability for a response action or for some or all of the costs of such action in the context of 'an administrative or judicially approved settlement' as the text of section 113(f)(3)(B) requires.

*Id.* (citation, ellipsis, and alterations omitted). To be specific, "Guam insist[ed] that the parties 'did not resolve response cost liability' in the 2004 Consent Decree," given that "the provisions of that agreement left Guam fully exposed to future liability under CERCLA." *Id.* (citation omitted). Guam also asserted that "because the 2004 Consent Decree was 'expressly limited to the [Clean Water Act],' . . . it does not qualify as a 'settlement agreement' giving rise to a cause of action for contribution under CERCLA's section 113(f)(3)(B)." *Id.* at 81 (citations omitted).

B.

In ruling on the United States' motion to dismiss, this Court acknowledged that "cost-recovery claims under CERCLA section 107(a) and contribution claims under CERCLA section 113(f)(3)(B) are exclusive of one another, such that Guam is permitted to proceed against the United States for full cost recovery under section 107(a) only if Guam's right to contribution under section 113(f)(3)(B) has not been triggered." *Id.* at 84 (footnote omitted). The Court therefore assessed "whether the 2004 Consent Decree resolved Guam's liability for the response action or response costs that Guam undertook with respect to the Ordot Landfill and also qualifies as a 'settlement' within the meaning of section 113(f)(B)(3) [of CERCLA]." *Id.* (internal

quotation marks, citation, and alterations omitted).

The Court's resolution of this issue rested on several significant legal determinations. First, the Court concluded that liability "is not 'resolved' simply and solely because interested parties have 'signed a settlement agreement' concerning the response actions that will be taken at the site, or because one or more [potentially responsibly parties ('PRPs')] have 'cut a check' made payable to the United States." *Id.* at 85 (alteration and citations omitted). Rather, "'the nature, extent, or amount of a PRP's *liability* must be decided, determined, or settled, at least in part, by way of agreement with the EPA.'" *Id.* (quoting *Bernstein v. Bankert*, 733 F.3d 190, 212 (7th Cir. 2013)) (emphasis in original). The Court then explained that in order to determine whether an agreement has "decided, determined, or settled the nature, extent, or amount" of a party's liability, *id.* (internal quotation marks and citation omitted), "a court must 'look to the specific terms of the agreement' and ascertain whether, based on the provisions in the settlement agreement, the parties intended to resolve the plaintiff's liability within the meaning of section 113(f)(3)(B)[,]" *id.* (quoting *Fla. Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 1001 (6th Cir. 2015)).

Significantly for present purposes, the Court also specifically noted that "the courts of appeals diverge . . . with respect to *how* one best interprets agreement language that expressly eschews liability and reserves the right to sue," *id.* at 86 (emphasis in original), and it joined the Sixth and Seventh Circuits in concluding that "contracts containing non-admissions of liability, broad reservations of rights, and conditional covenants not to sue do not resolve liability[,]" *id.* (capitalization altered). Turning to the settlement agreement at issue in this case—which contained a "clear

disclaimer of liability, [a] conditional release of liability for the claims the United States had brought against Guam in a [Clean Water Act] complaint, and two complementary reservation-of-rights clauses[,]" *id.* at 92—this Court ultimately "conclude[d] that the 2004 Consent Decree did not trigger Guam's contribution rights under section 113(f)(3)(B) . . . which means that Guam is not precluded from maintaining its section 107(a) claim against the United States[,]" *id.* at 84.

Thus, in ruling on the United States' motion to dismiss, the Court expressly found

> that whether or not an agreement for the removal or remediation of hazardous waste 'resolves' liability for section 113(f)(3)(B) purposes turns on the terms of the agreement, and that, here, the 2004 Consent Decree did not resolve Guam's liability for the Ordot Landfill cleanup given the broad, open-ended reservation of rights, the plain non-admission of liability, and the conditional resolution of liability that the agreement contains.

*Gov't of Guam*, 341 F. Supp. 3d at 84.   And it was for those reasons that the Court denied the United States' motion to dismiss.  *See id.* at 97.

## II.

Section 1292(b) of Title 28 of the United States Code provides that a district court may, in its discretion, certify an order for interlocutory appeal if "(1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance the litigation." *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 95 (D.D.C. 2003); *see also* 28 U.S.C. § 1292(b).  "A mere claim that the district court's ruling was incorrect" will not suffice to establish that "a substantial ground for difference of opinion" exists. *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 104 (D.D.C. 2005)

(internal quotation marks and citation omitted). Rather, the requisite grounds for difference of opinion are "often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits[,] [or] where a court's challenged decision conflicts with decisions of several other courts." *APCC Servs.*, 297 F. Supp. 2d at 97–98. "[A] court faced with a motion for certification must analyze the strength of the arguments in opposition to the challenged ruling to decide whether the issue is truly one on which there is a substantial ground for dispute." *Id.* at 98. And in order to show that an interlocutory appeal would "materially advance the ultimate termination of the litigation[,]" 28 U.S.C. § 1292(b), a movant must show that "reversal [of the court's order on appeal] would hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense." *Nat'l Veterans Legal Servs. Program v. United States*, 321 F. Supp. 3d 150, 155 (D.D.C. 2018) (internal quotation marks and citation omitted).

In addition to satisfying the elements of section 1292(b) in a technical sense, the party who seeks an interlocutory appeal also "has the burden of persuading the Court that the circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *APCC Servs.*, 297 F. Supp. 2d at 95 (internal quotation marks and citation omitted). Because interlocutory appeals are generally disfavored, given the "strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals," *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F.Supp.2d 16, 20 (D.D.C. 2002) (internal quotation marks and citation omitted), when deciding whether

to grant a request for certification of an order for interlocutory appeal under section 1292(b), a court must conclude not only that the moving party has satisfied all of the elements of section 1292(b), but also that certification is appropriate as a discretionary matter. *See Molock v. Whole Foods Mkt. Grp., Inc.*, 317 F. Supp. 3d 1, 4 (D.D.C. 2018).

There is no dispute in the instant case that the United States has satisfied the first element of the section 1292(b) standard. (*See* Def.'s Mem. at 11, 12 (identifying "several controlling questions of law" that this Court's prior Order encompasses, including "how to properly interpret CERCLA [section 113(f)(3)(B)]"; "[w]hether the 2004 judicial settlement with the United States allowed Guam to pursue a CERCLA contribution claim under CERCLA [section 113(f)(3)(B)]"; and the proper "legal interpretation of the 2004 consent decree's terms"); *see also* Pl.'s Opp'n at 8 (conceding that "the first prong of the discretionary § 1292(b) test is admittedly satisfied").) For the reasons explained below, this Court further finds (A) that there is a substantial ground for difference of opinion concerning at least one such question, (B) that the immediate resolution of that question on appeal would materially advance the ultimate disposition of the litigation, and (C) that certification of the Court's prior Order is appropriate under the circumstances presented here. (*See* Def.'s Mem. at 10–11 (citing *Howard v. Office of the Chief Admin. Officer of the U.S. House of Reps.*, 840 F. Supp. 2d 52, 55 (D.D.C. 2012); *GTE New Media Servs. Inc. v. Ameritech Corp.*, 44 F. Supp. 2d 313, 316 (D.D.C. 1999)).)

A.

Given this Court's prior ruling, a "substantial ground for difference of opinion,"

28 U.S.C. § 1292(b), plainly exists as to the question of "how one best interprets agreement language that expressly eschews liability and reserves the right to sue, when the court undertakes to evaluate whether a particular agreement resolved the liability of a CERCLA plaintiff for section 113(f)(3)(B) purposes[,]" *Gov't of Guam*, 341 F. Supp. 3d at 86 (internal quotation marks, alterations, and emphasis omitted). As explained in Section II above, a substantial ground for difference of opinion can be "established by a dearth of precedent within the controlling jurisdiction" or by "conflicting decisions in other circuits." *APCC Servs.*, 297 F. Supp. 2d at 97. It is clear to this Court that *both* of these circumstances exist here.

For one thing, there is no controlling precedent from the D.C. Circuit with respect to how to interpret section 113(f)(3)(B) in this context, because the D.C. Circuit has not yet addressed this question. In fact, this Court appears to be the only district court within this jurisdiction to have considered the matter. And, indeed, whether or not a particular consent decree or other agreement "resolves" liability for the purpose of this CERCLA section appears to be a mixed question of law and fact that plainly warrants guidance from the courts of appeals.

Furthermore, as mentioned above and explained fully in this Court's prior opinion, the other courts of appeals that have analyzed this issue are *split*—with the Sixth and Seventh Circuits on one side, and the Ninth Circuit on the other. *See Gov't of Guam*, 341 F. Supp. 3d at 86; *see also Asarco LLC v. Atl. Richfield Co.*, 866 F.3d 1108, 1124–25 (9th Cir. 2017); *Fla. Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 1004–05 (6th Cir. 2015); *Bernstein v. Bankert*, 733 F.3d 190, 212–14 (7th Cir. 2013). This Court devoted five pages of its prior opinion to a robust analysis of the divergent circuit

court views, *see Gov't of Guam*, 341 F. Supp. 3d at 86–90; *see also APCC Servs.*, 297 F. Supp. 2d at 98 (directing courts to "analyze the strength of the arguments in opposition to the challenged ruling" when evaluating a section 1292(b) certification motion), and the schism need not be recounted fully here.  It suffices to reiterate that this Court agreed—and continues to agree—with the Sixth and Seventh Circuits' holding that "contracts containing non-admissions of liability, broad reservations of rights, and conditional covenants not to sue do *not* resolve liability[,]" *Gov't of Guam*, 341 F. Supp. 3d at 86 (capitalization altered and emphasis added).  And this conclusion stands in clear contrast to the Ninth Circuit's stated position that such agreements *can* "'resolve' liability for the purpose of CERCLA section 113(f)(3)(B)[.]"  *Id.* at 88.  This Court has not faltered in its abiding belief in its own interpretation of section 113(f)(3)(B), which the Sixth and Seventh Circuits share; however, given the Ninth Circuit's opposing view, there unquestionably exists substantial ground for different interpretations.  *See, e.g.*, *In re Cintas Corp. Overtime Pay Arbitration Litig.*, No. M:06-cv-01781, 2007 WL 1302396, at *2 (N.D. Cal. May 2, 2007) (finding that "[s]ubstantial ground for difference of opinion" existed because "there is a substantial circuit split" on the pertinent issue).

The Government of Guam attempts to counter this conclusion by pointing out that, "while the issue of law decided in the Court's Opinion and Order may have been of first impression in this Circuit, that fact alone is not dispositive of whether there are 'substantial grounds for differences of opinion' as to that issue."  (Pl.'s Opp'n at 9–10.) This may be so, but, again, the fact that the D.C. Circuit has not yet decided the pertinent legal issue is only *one* component of this Court's conclusion that there exists

substantial ground for difference of opinion for the purpose of the pending section 1292(b) certification motion. And Guam does little to diminish the import of the most significant aspect of this Court's certification reasoning: the fact that there is a circuit split on the precise legal issue that precipitated this Court's ruling regarding the United States' motion to dismiss.

Boiled to bare essence, Guam's primary argument in opposition to certification is that the Ninth Circuit got it wrong, and that, to the extent that "[t]he Court's Opinion and Order comports with the majority of Circuit Courts that have addressed the issue[,]" this Court has "provided a 'better approach' than the Ninth Circuit to the question of law at issue." (*Id.* at 10.) But a district court's agreement with the weight of authority regarding a particular issue does not mean that there is no "substantial ground for difference of opinion[,]" 28 U.S.C. § 1292(b), as evidenced by the reasoning and opposing conclusion of another court of appeals, *cf. APCC Servs.*, 297 F. Supp. 2d at 98 ("The mere fact that a substantially greater number of judges have resolved the issue one way rather than another does not, of itself, tend to show that there is no ground for difference of opinion." (internal quotation marks and citation omitted)). And while Guam correctly observes that the Ninth Circuit disagrees with this Court on only "one limited issue" (Pl.'s Opp'n at 10), it does not dispute that this relatively narrow disagreement centers on what has turned out to be the controlling legal issue with respect to the disputed motion in the instant case. (*See* Def.'s Mem. at 11.)

Finally, even when the majority of the circuit courts that have addressed a particular issue supports the district-court ruling that a proposed interlocutory appeal seeks to address, there may still be a sufficiently "substantial" ground for disagreement

warranting interlocutory review, based on the nature of the case and the threshold status of the disputed district court determination. Specifically, "[w]here proceedings that threaten to endure for several years depend on an initial question of jurisdiction or the like, certification may be justified even if there is a relatively low level of uncertainty." *APCC Servs.*, 297 F. Supp. 2d at 98 (internal quotation marks, citation, and ellipsis omitted).

So it is here. The proceedings in this case "threaten to endure for several years[,]" *id.*, as discussed below, and the issue to be presented on appeal is a significant threshold question that, if reversed by the D.C. Circuit, would likely result in dismissal of Guam's entire case. Therefore, given that at least one court of appeals has disagreed with this Court's conclusion regarding "how one best interprets [settlement] agreement language . . . when the court undertakes to evaluate whether a particular agreement resolved the liability of a CERCLA plaintiff for section 113(f)(3)(B) purposes[,]" *Gov't of Guam*, 341 F. Supp. 3d at 86 (internal quotation marks, alterations, and emphasis omitted)—a legal issue that arises at the outset of this potentially lengthy legal dispute and that might well resolve the entire case—this Court finds that the requisite "substantial ground for difference of opinion" exists to support the United States' call for interlocutory review.

B.

Allowing the United States to appeal this Court's Order denying its motion to dismiss *now*, rather than after the Court issues a final judgment, would also materially advance this litigation. *See* 28 U.S.C. § 1292(b); *see also Nat'l Veterans Legal Servs. Program*, 321 F. Supp. 3d at 155 ("[T]he relevant inquiry is whether reversal would

hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense." (internal quotation marks and citation omitted)). "[A] movant need not show that a reversal on appeal would actually end the litigation." *Id.* (internal quotation marks and citation omitted). But adding a belt to suspenders, the United States has done so here.

That is, if the D.C. Circuit were to reverse this Court's ruling and find that the 2004 Consent Decree did, in fact, "resolve[] [Guam's] liability to the United States for the cleanup and closure of the Ordot Landfill" and was "a cognizable 'settlement' for [CERCLA] section 113(f)(3)(B) purposes[,]" and thus that the past settlement triggered Guam's right to contribution under section 113(f)(3)(B), then Guam's "contribution action must be dismissed as untimely, per the applicable three-year statute of limitations." *Gov't of Guam*, 341 F. Supp. 3d at 77 (internal quotation marks and citations omitted); (*see also* Def.'s Mem. at 13). Moreover, Guam's section 107(a) claim would also necessarily fail, because, as noted above, "cost-recovery claims under CERCLA section 107(a) and contribution claims under CERCLA section 113(f)(3)(B) are exclusive of one another," and "Guam is permitted to proceed against the United States for full cost recovery under section 107(a) only if Guam's right to contribution under section 113(f)(3)(B) has not been triggered." *Gov't of Guam*, 341 F. Supp. 3d at 84 (footnote omitted); (*see also* Def.'s Mem. at 13). A reversal of this Court's Order on appeal would therefore bring this litigation to a close, which obviously meets the standard of "materially advanc[ing] the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The potential for conservation of judicial resources and avoidance of "needless expense" to the parties is another factor that weighs in favor of certifying this Court's ruling for interlocutory appeal. *Nat'l Veterans Legal Servs. Program*, 321 F. Supp. 3d at 155 (internal quotation marks and citation omitted). Discovery has not yet begun in this cost-recovery case. And as the United States notes in its motion to certify, discovery is likely to be wide-ranging and extensive, for it "will cover issues ranging from World War II military engagements on the Island to the many decades of Guam's subsequent waste disposal operations at the Ordot Dump." (Def.'s Mem. at 17.) Guam does not contest that "[t]he Parties likely will spend many thousands of hours[,] and the United States will incur hundreds of thousands of dollars in discovery and expert-related expenses[,] to defend this CERCLA case all the way through trial[.]" (*Id.* at 18.) And joinder of additional parties, *i.e.*, those entities "that arranged for the disposal of hazardous waste at the Ordot Dump or transported such waste to the Dump[,]" may also be necessary. (*Id.* at 17.) Thus, "even under Guam's case management proposal[,]" it seems likely that this case could take several years to litigate. (*Id.* at 18). On the other hand, if the Court's motion-to-dismiss ruling is certified for interlocutory review, and if the D.C. Circuit reverses this Court's Order, none of the anticipated lengthy and costly proceedings would be necessary.

Guam responds that even if this Court were to certify its Order for immediate appeal and the D.C. Circuit were to reverse the Order, litigation would still continue, as "the case would be returned to this Court in order to address Guam's alternative grounds for denial" of the United States' motion to dismiss. (Pl.'s Opp'n at 11); *see also Gov't of Guam*, 341 F. Supp. 3d at 94 n.13 ("Because this Court concludes that the

2004 Consent Decree did not resolve liability within the meaning of section 113(f)(3)(B), it need not consider whether a consent decree that addresses claims under the CWA can qualify as a 'settlement' within the meaning of section 113(f)(3)(B), or any of Guam's myriad other contentions." (internal citations omitted)). This argument appears to proceed from a misunderstanding of the nature of an interlocutory appeal of the denial of a dispositive motion that sought to terminate the case.

First of all, it is clear beyond cavil that "the appellate court may address any issue fairly included within the certified order because it is the *order* that is appealable, and not the controlling question identified by the district court." *United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1194 (D.C. Cir. 2005) (quoting *Yamaha Motor Corp., USA v. Calhoun*, 516 U.S. 199, 205 (1996)) (emphasis in original) (internal quotation marks omitted)). This means that, upon interlocutory appeal, the D.C. Circuit would be reviewing this Court's Order denying the United States' motion to dismiss, "regardless of the grounds [this] Court gave for its decision." *Id.* And because Guam's alternative arguments were put "before the [C]ourt[,]" the circuit court can consider those arguments within the ambit of its interlocutory review. *Id.*

What is more, because the effect of an appellate reversal of a district court's order denying a motion to dismiss is a holding by the court of the appeals that the district court should have granted the motion—*i.e.*, a reversal under these circumstances *ends the case*—the D.C. Circuit would most likely reach and dispose of Guam's alternative arguments for why the case should go forward in the course of conducting its interlocutory review. *Cf. id.* (noting that "granting [the summary judgment] motion would have resulted in *complete dismissal* of the Government's claim" and thus the

court of appeals "may review [the District Court's denial] regardless of the grounds the District Court gave for its decision" (emphasis in original)); *id.* at 1196 ("[I]t is difficult to see how we could establish such a policy that would cause us to affirm a decision denying summary judgment when a ground compelling its grant is fairly encompassed within the order."); *see also Lewis v. Pension Benefit Guar. Corp.*, 912 F.3d 605, 609 (D.C. Cir. 2018) (explaining that, in the context of an interlocutory appeal pursuant to section 1292(b), court of appeals still "review[s] de novo the district court's decision on the motion to dismiss"). Consequently, far from Guam's suggestion that an appeal to the D.C. Circuit would encompass only the one anti-dismissal argument that this Court found persuasive, the D.C. Circuit would be called upon to determine the propriety of this Court's denial of the United States' motion more generally (based on whatever arguments the circuit court deemed necessary to consider), and if it reversed this Court's ruling, it would order that the motion be granted and that Guam's case be dismissed.

Undaunted, Guam further insists that the instant motion for certification is part of an overall "strategy of delay and piecemeal litigation" on the part of the United States that this Court should not countenance. (Pl.'s Opp'n at 12; *see also id.* (asserting that "the U.S. also has raised 18 other defenses in this case for which the same arguments made [in its motion to certify] could be made again following another unfavorable (to the U.S.) result[,]" and that "[t]he Court should not permit the U.S. to continue its strategy of delay and piecemeal litigation where many other dispositive motions and differences of opinion are likely to follow").) These contentions are plainly speculative, and Guam has not pointed to any evidence of bad faith on the part

of the United States or its representatives.  In the absence of such evidence, Guam's concern about future actions that counsel for the United States may or may not take is manifestly insufficient to rebut an otherwise viable certification request.  If litigation continues before this Court and the United States elects to engage in unwarranted delay and "piecemeal" challenges in regard to future matters (*id.*), then Guam might well be in a position to support its contentions and to argue that certain procedural maneuvers should not be permitted going forward.  But for now, Guam has failed to make a sufficient showing that the present motion for certification is indicative of any such bad faith strategy on the part of the United States.

## C.

Having concluded that the each of the elements of section 1292(b) have been met, this Court further finds that certifying its Order denying the United States' motion to dismiss for interlocutory appeal is appropriate as a discretionary matter.  *See APCC Servs.*, 297 F. Supp. 2d at 95.  The Court will exercise its discretion in this regard for largely the same reasons that it has determined that allowing for interlocutory appeal under the circumstances presented here could materially advance the litigation.  (*See supra* Sec. II.B.)  Well over one-hundred million dollars are at stake in this case, *see Gov't of Guam*, 341 F. Supp. 3d at 76, and discovery regarding the causes of the contamination at issue is likely to be voluminous and costly (*see* Def.'s Mem. at 18.). The parties and this Court would avoid significant costs if the D.C. Circuit decides on appeal that this Court was wrong about the threshold legal question pertaining to Guam's ability to seek cost recovery as a matter of law.

In sum, this Court has concluded that allowing the United States to appeal the

Court's ruling denying its motion to dismiss immediately not only satisfies the elements of section 1292(b) of Title 28 of the United States Code, but also is appropriate under the circumstances presented in this case. As such, the Court will certify its Order of September 30, 2018, for interlocutory appeal.

III.

This Court must next decide whether or not to stay the present proceedings, in light of its decision to certify its Order denying the United States' motion to dismiss for interlocutory appeal. *See* 28 U.S.C. § 1292(b) ("[A]pplication for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."). "District courts have broad discretion to stay all proceedings in an action pending the resolution of independent legal proceedings." *Nat'l Indus. for the Blind v. Dep't of Veterans Affairs*, 296 F. Supp. 3d 131, 137 (D.D.C. 2017). "In considering a stay, courts must 'weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties.'" *Id.* (quoting *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012)). Thus, "hardship to the parties and benefits to judicial economy are the key interests to consider in evaluating a motion for a stay." *Id.*

It is clear to this Court that staying the instant district court proceedings would serve judicial economy and would not subject either party to hardship. As discussed above, discovery has not yet begun in this case, and a reversal of this Court's ruling would likely make discovery unnecessary. Moreover, given that the underlying case is itself a cost-recovery action, any clean-up costs that Guam incurs during the pendency

of the interlocutory appeal would be subject to recovery (just like the costs that have already been incurred), plus interest, if the D.C. Circuit affirms this Court's Order on appeal.

Guam argues that, instead of issuing a stay, "the case should be trifurcated," and the Court should allow discovery to proceed. (Pl.'s Opp'n at 13; *see also* Joint Case Mgmt. Report, ECF No. 48, at 12 (proposing that "Phase I would focus solely on issues of liability and associated defenses"; "Phase II would focus solely on damages and associated defenses"; and "Phase III would focus solely upon allocation of responsibility between the liable Defendants").) In this regard, Guam asserts that the district court's rationale behind denying the requested stay in *In re Vitamins Antitrust Litigation* is "equally applicable here[.]" (*Id.*); *see also In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL 33142129, at *2 (D.D.C. Nov. 22, 2000) (reasoning that "[a] stay of jurisdictional discovery would certainly thwart the prompt resolution of this matter"). But the order that was certified for interlocutory appeal in the *In re Vitamins* case addressed only which rules would govern jurisdictional discovery, and did not resolve any dispositive legal issues. *See id.* at *1. Thus, that court's "prompt resolution" rationale does not apply here. *Id*. at *2. In other words, in the *In re Vitamins* case, proceedings would continue before the district court no matter what the D.C. Circuit decided, whereas, here, if the D.C. Circuit reverses this Court's decision, the case will be over.

Guam further asserts that it "has already borrowed and spent approximately $160 million on environmental cleanup related to the Ordot Dump and relocation of the facility to a new location[,]" and "[e]very day in which the U.S. delays this case is

another day Guam has to pay full freight for the U.S.' liability." (Pl.'s Opp'n at 14.) This argument is not a persuasive response to the United States' request for a stay, because, as this Court has already noted, if the ruling on the motion to dismiss stands and the case proceeds, and if Guam ultimately wins on the merits, Guam will be able to seek prejudgment interest to compensate for any delay resulting from the interlocutory appeal. *See Oldham v. Korean Air Lines Co., Ltd.*, 127 F.3d 43, 54 (D.C. Cir. 1997) ("The purpose of [pre-judgment interest] awards is to compensate the plaintiff for any delay in payment resulting from the litigation.").

Thus, the Court concludes that a stay will not subject the parties to hardship, and that staying the case during the pendency of the D.C. Circuit's interlocutory review will promote the efficient use of judicial resources and prevent potentially unnecessary and burdensome discovery expenses.

IV.

For the foregoing reasons, and as set forth in the accompanying Order, the United States' motion for certification under section 1292(b) of Title 28 of the United States Code will be **GRANTED**. Furthermore, all proceedings before this Court are **STAYED** pending a decision by the D.C. Circuit.

DATE: February 28, 2019

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge